UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEVEN SOPTIC, HEATHER FITZ-PATRICK, JESSICA MOTA, RYAN CADDELL and TARA HARLAN, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO. ) |
| SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; and AT&T SERVICES, INC., | ) ) ) ) ) |
| Defendants. | ) ) |

# COMPLAINT

Plaintiffs, Steven Soptic, Heather Fitzpatrick, Jessica Mota, Ryan Caddell and Tara Harlan, for their Complaint against Southwestern Bell Telephone L.P. and AT&T Services, Inc. (collectively, "Defendants"), state as follows:

**Nature of Plaintiff's Claims**

1. This is an action under the Fair Labor Standards Act ("FLSA") (Count 1) and for breach of contract action (Count II) for certain call center employees who were not paid by Defendants for all time worked. Defendants failed to pay for all time worked by Plaintiffs, depriving these employees of their earned straight time and overtime wages.

**Jurisdiction and Venue**

2. This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

1

3. This Court has personal jurisdiction over the Defendants for reasons that include:

(a) Defendants conduct business and enter into contracts within the State of Missouri and in this District, and with persons and businesses located within the State of Missouri and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Missouri and their employees who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their telephone services at residents and businesses located in the State of Missouri; and

(d) Defendants purposefully solicit Missouri residents to enter into service agreements; and

(e) Defendants operated a call center in this state and in this District, where Plaintiffs worked and where some of the transactions giving rise to this lawsuit occurred.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Western District of Missouri, and the causes of action set forth herein have arisen and occurred in part in the Western District of Missouri.

**Parties**

    *i.    Plaintiffs*

5.  Plaintiff Steven Soptic resides in this judicial district, and has worked as an employee for Defendants prior to the filing of this action. A copy of Plaintiff Soptic's consent form is attached hereto as an Exhibit.

6.  Plaintiffs Heather Fitzpatrick, Jessica Mota, Ryan Caddell and Tara Harlan reside in this judicial district, and have worked as an employee for Defendants prior to the filing of this action. A copy of their consent forms are attached hereto as an Exhibit.

7.  Plaintiffs have been compensated as hourly paid non-exempt employees of Defendants in this District during the applicable FLSA statute of limitations period.

    *ii.    Southwestern Bell Telephone*

8.  Southwestern Bell Telephone, L.P. is a Texas limited partnership doing business as a telecommunications firm in the State of Texas and in the Southwestern United States, with over 1,000 employees. It is a wholly-owned subsidiary of AT&T, Inc., and it also does business under the name "Southwestern Bell", AT&T Communications of Texas, LLC, and "AT&T Southwest." It is headquartered in Dallas, Texas.

9.  At all times prior to the filing of this Complaint through the present, Southwestern Bell Telephone, L.P. was engaged in the business of, among other things, operating call centers staffed by the opt-in plaintiffs alleged herein, in the Southwestern United States, including Dallas, Texas; Norman, Oklahoma; San Antonio, Texas; and other call centers in Defendants' Southwest region, including in Missouri, Kansas, Oklahoma and Arkansas.

10. Southwestern Bell Telephone, L.P. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

11. Southwestern Bell Telephone, L.P. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

12. Southwestern Bell Telephone, L.P. violated the Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

13. The work performed by Plaintiffs has benefitted Defendant Southwestern Bell Telephone, L.P.

14. Southwestern Bell Telephone, L.P. employs, manages, and/or controls the coaches, supervisors, and call center managers, who are responsible for the day-to-day oversight, evaluation and review of all call center representative's performance for the call centers at issue in this case. This includes, *inter alia,* reviewing job performance, administering discipline, and/or terminating the employment of call center representatives.

15. Southwestern Bell Telephone, L.P. has had the power to hire and fire employees, including Plaintiffs, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work performed by those

4

employees, and it maintained employment records for those employees, as specifically set forth in the "AT&T Corporate Code of Conduct", a written directive issued by AT&T through Southwestern Bell Telephone, L.P. to all AT&T employees, and through other human resources and personnel directives issued nationwide.

16. At all relevant times, Southwestern Bell Telephone, L.P. exercised control over and was the "employer" and/or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

### iii. AT&T Services, Inc.

17. AT&T Services, Inc. is a Delaware corporation, formerly known as SBC Services, Inc.

18. AT&T Services, Inc. provides transaction processing services, billing, payroll, accounts payable, customer remittance, fixed assets record keeping, GL processing, personnel management and specialized services to the parent companies and to related affiliates, including the other Defendants, in this judicial district.

19. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

20. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

21. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance, job performance, discipline and termination at each of the call centers at issue in this lawsuit.

22. AT&T Services, Inc. has processed the payroll for Plaintiffs and issued them payroll checks.

23. AT&T Services, Inc. has had the power to hire and fire employees, including Plaintiffs, it has supervised and controlled employee work schedules or conditions of payments for those employees, it has calculated and determined the rate and method of payment for work performed by those employees, and it has maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

24. AT&T Services, Inc. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

25. AT&T Services, Inc. is reflected as the employer on Plaintiffs' statement of earnings, taxes and allotments (e.g., pay stub), and, upon information and belief, is reflected as the employer on each of the opt-in plaintiffs' pay stubs.

26. At all relevant times, AT&T Services, Inc. exercised control over and was the "employer" or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

27. AT&T Services, Inc. has admitted that it is the "employer" of each of the Plaintiffs for purposes of the FLSA.

28. AT&T Services, Inc. violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data, (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of 8 minutes or less.

29. The work performed by Plaintiffs has benefitted Defendant AT&T Services, Inc.

30. Defendants directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit. Further, Defendants ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the class members.

**Factual Background**

31. Plaintiffs have worked as call center employees for Defendants, along with thousands of other call center employees employed by Defendants during the three years prior to the filing of this action.

32. Plaintiffs' and their co-workers' duties include speaking via telephone with customers, former customers and potential customers of Defendants' internet, television, telephone and related services.

33. Plaintiffs are typically scheduled to work for forty (40) hours per week.

34. Plaintiffs and their co-workers arrive for work in the morning and typically begin the process of logging on to various computer programs they use in their duties, which can take several minutes.

35. Plaintiffs and their co-workers are expected by their employers to be ready and available to receive telephone calls at the beginning of their scheduled shift time, by turning on their

mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

36. Plaintiffs and their co-workers are carefully monitored by Defendants' supervisors to determine their readiness for work at the beginning of their scheduled shift times.

37. Plaintiffs are provided a "grace period" within which they must be ready and available to take calls. If they are not ready and available within that time, they are considered late for work.

38. Even though Plaintiffs are provided a grace period, this period is insufficient to capture all the time Plaintiffs spend getting to the "ready and available" status so Plaintiffs perform uncompensated work prior to the beginning of their shifts. This time is tracked by Defendants' operating system; however, Defendant have failed to require their Force Team members to use that data for the purpose of time keeping and processing payroll.

39. Defendants have required that Plaintiffs must log out of their "ready and available" status for both their two fifteen-minute breaks and their meal break, each shift that they work.

40. The end-of-day log-out process consists of operating certain computer programs that log the actual time that Plaintiffs leave their "ready and available" status and that log the actual time of day Plaintiffs return to their "ready and available" status; and which also log the actual time that the programs closes and the systems logs Plaintiffs out, after the "ready and available" status is logged out.

41. The telephone calls taken by Plaintiffs are from live customers who typically express various questions and concerns about the customers' service, finances, available equipment, upgrading or downgrading service, and similar matters. The calls typically last an average of 5-30 minutes.

42. As a result, Plaintiffs frequently are still involved with a telephone call at the end of their scheduled shift time.

43. Nonetheless, Plaintiffs are prohibited by Defendants from disconnecting a customer call before the call is completed, when that call extends beyond the end time of Plaintiffs' scheduled shift time; and are instead required to complete the call.

44. When Plaintiffs have finished their call work for the day, they typically need to perform off-line follow-up work in Defendants' other computer systems and applications, in order to complete customers' orders, during the course of their work. This work is typically performed after the end time of their scheduled shift.

45. Plaintiffs frequently perform work during their meal periods, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors, reviewing call notes from previous call sessions, and performing after-call work.

46. If Plaintiffs wish to be compensated for the time they have worked beyond their scheduled shift time, they must then affirmatively make a request to a management group controlled by Defendants called the "Force Team," setting forth the amount of time they continued to work outside of their scheduled shift times.

47. All Defendants maintain and control the software program "IEX", which is the shared software platform that manages the work schedules of all call center representatives nationwide, including Plaintiffs.

48. Defendants utilize the IEX schedules in that software platform to pay call center representatives according to their scheduled shift hours, and not according to actual time worked,

9

unless an "Exception" to the schedule is entered into the IEX software by a member of the Force Team.

49. Plaintiffs are not given direct access to their online IEX schedules in order to directly enter their overtime worked exceptions into the system.

50. The exception request is submitted to clerks on the Force Team, either by email, instant message, on paper, or in some other manner.

51. However, if no exception request is submitted, then Plaintiffs are not paid for time worked beyond their scheduled shifts, even though Defendants observe Plaintiffs working and/or are otherwise fully aware of the fact and/or the time that Plaintiffs have worked beyond their scheduled shift.

52. Plaintiffs and the other employees are only paid for time beyond their scheduled shift, including overtime, if they complete and submit this exception request, even though Defendants have a contemporaneous electronic record of the actual time that Plaintiffs log out of the phone system and the operating platform, before or after their scheduled shift time; and even though Defendants have a contemporaneous electronic record of the actual time during which Plaintiffs close their programs.

53. Plaintiffs and the other employees have been required to request to be paid for all time worked beyond their scheduled shift, or else they were not paid for that time worked, throughout the relevant time.

54. Defendants are aware that Plaintiffs regularly worked incidental overtime that was unpaid.

55. Defendants also subject all call center associates in the domestic United States who receive incoming customer calls as part of their job duties to a complex system of job performance criteria, commonly referred to by the employees as "Adherence." One aspect of that job performance criteria is how closely those employees adhere their work hours to their scheduled shift hours. If a call center associate reports incidental overtime or trade time – a/k/a time worked outside their scheduled shifts hours – that reporting negatively impacts their overall job performance review and can also lead to their losing the opportunity to apply for or obtain higher-paying evening hours schedules, job transfer requests, promotions, and can even lead to termination of employment.

56. At times, Plaintiffs have not reported incidental overtime worked before their shift, after their shift and/or during their meal period because doing so would negatively impact their job performance review and because Defendants were aware of the time worked.

57. The AT&T Code of Business Conduct ("COBC") is drafted and distributed by Defendants' parent entity AT&T, Inc., and compliance with its provisions is mandatory for Defendants and for their employees. The COBC requires all supervisors of Plaintiffs to ensure that all time worked by Defendants' employees is recorded and reported for pay purposes - even if the employee failed to receive approval to work the overtime. Managers are prohibited from permitting employees to violate this guideline.

58. The COBC requires all supervisors of the Plaintiffs to review and verify the accuracy of all time reported by Plaintiffs in the pay period and by its deadline to input changes for the pay period. Managers are prohibited from permitting employees to violate this guideline.

59. The COBC identifies various examples of work that must be reported by Supervisors and paid to Plaintiffs, including without limitation: (1) Preparatory work before the start of the shift

11

that is necessary for your job; (2) Cleanup work after the end of a shift, including verifying or correcting information entered in company systems; (3) Performing work during lunch periods; and (4) Performing work before or after scheduled hours.

### i. *Defendants' Practice of Rounding Clocked Time*

60. While working for Defendants during the relevant time period, Plaintiffs would regularly arrive for work and begin working before the start time of their scheduled shift.

61. While working for Defendants during the relevant time period, Plaintiffs regularly performed work after the end time of their scheduled shifts, including but not limited to finishing calls in which they were involved at the end of the time of their scheduled shift.

62. Defendants utilize certain software developed by VMWare that captures and records the precise time of day and date that Plaintiffs would log out from their assigned computer terminal at the end of their work day; and Defendants have retained a copy of such recording.

63. While working for Defendants during the relevant time period, Plaintiffs regularly performed work during their unpaid meal periods.

64. During the relevant time period, Defendants have had other records of the actual time when Plaintiffs and their coworkers actually finished calls in which they were involved at the time of and after the end of their scheduled shift time.

65. Defendants did not use those records for calculating Plaintiffs' and their coworkers' compensation.

66. Instead, Defendants rounded the time from the actual time worked to the scheduled shift time, and the scheduled shift times, not the actual times, were then used to calculate and process payroll for Plaintiffs.

67. During the relevant time period, Plaintiffs were regularly not paid for the additional straight time and overtime work performed prior to the start time of their scheduled shifts.

68. During the relevant time period, Plaintiffs were not regularly paid for the additional straight time and overtime work performed during meal periods and after the end time of their scheduled shifts.

69. Plaintiffs estimate that they each often worked approximately a minimum of one or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs have worked is in the exclusive possession and control of Defendants.

70. Defendants' practice of rounding and failing to pay for time worked pre-shift and post-shift and instead rounding the time for which it would compensate Plaintiffs to their scheduled shift time is wide-spread and has occurred for a significant period of time during the last three years.

71. All unscheduled events recorded in Plaintiffs' IEX icon-based schedules are converted into computer code compatible with AT&T's central payroll processing software, called eLink, for the purpose of generating nationwide batched payroll, by an intermediary computer program called TVI.

72. The TVI program automatically rounds all unscheduled IEX events that fall outside of Plaintiffs' scheduled shift hours to zero for purposes of payroll processing and batching.

73. The actual time worked by Plaintiffs prior to and after their scheduled shift times can be determined from the log out records themselves, which are required to be kept by Defendants pursuant to 29 U.S.C. §211(c), 29 C.F.R. § 516 and the FLSA generally.

74. At various times and in various locations across the country, AT&T has directed force team members to record the last logout from the last unscheduled event recorded in call center

associate IEX schedules to calculate the employees pay, regardless of whether those logouts fell outside of scheduled shift hours, and without enforcing the self-reporting timekeeping requirement for those call center associates.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES

1-74. Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs as if fully set forth in this Count.

75. Plaintiffs bring this count pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

76. Plaintiffs are or were hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers during the relevant time period and whose daily log- in and log-out time was rounded and/or unpaid as described above.

77. Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

78. Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

79. Plaintiffs were not paid for all hours worked in excess of 40 in a week, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. 207(a).

80. Plaintiffs also were not paid a *bona fide* regular rate of pay for straight time hours worked when those hours were not tracked and accounted for, but were worked by these individuals.

81. While working for Defendants, Plaintiffs were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, that were necessary for the performance of their duties for Defendants, and that were integral and indispensable to their principal activities. Despite this, Plaintiffs regularly were permitted or required to work "off the clock" as set forth herein that entitled them to compensation therefore.

82. Defendants required and/or permitted Plaintiffs to:

a. work off the clock prior to the beginning of the call-center employee's scheduled shift; and

b. remain on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and off the clock, in the interest of the employer.

83. Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs.

84. Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

85. At all times relevant hereto, the action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay one and one-half times the regular rate for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

86. As a direct and proximate result thereof, Plaintiffs are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

87. Plaintiffs request that the Court award the unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

## COUNT II
## BREACH OF CONTRACT

1-86. Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs 1-86 as if fully set forth in this Count.

88. This Count arises from Defendants' failure to pay Plaintiffs for all their earned wages at the rates and in the manner that Defendants agreed, under the provisions of the collective bargaining agreement between the parties.

89. Plaintiffs have been employees of Defendants whom Defendants offered to and agreed to pay, and are due, but who have not been paid their wages earned for all time worked by them.

90. Plaintiffs bring this Count II to recover from Defendants unpaid wages and overtime compensation.

91. During the course of their employment with Defendants, Plaintiffs had an agreement with Defendants within the meaning of federal labor law, including but not limited to the Taft-Hartley Act and the Labor Management Relations Act, to be compensated for all hours worked, at the rates to which the parties agreed, which Defendants offered to pay and which Plaintiffs accepted.

92. Specifically, Defendants agreed to pay Plaintiffs at overtime rates, *e.g.*, 1 1/2 times their regular hourly rate, for each hour worked in excess of eight hours in each work day that was not used as Trade Time, regardless of whether Plaintiffs worked forty or more hours in a work week.

93. In one or more individual work weeks, Defendants did not pay each of the Plaintiffs for all time worked, or fraction thereof, at the rates to which the parties agreed, including at overtime rates.

94. Plaintiffs were entitled to be compensated for all time worked as agreed between Plaintiffs and Defendants.

95. At all times relevant, each of the Defendants have been an "employer" of each of the Plaintiffs, as that term is defined by the parties' Collective Bargaining Agreement.

96. At all times relevant, each of the Plaintiffs have been an "employee" of each of the Defendants, as that term is defined by the parties' Collective Bargaining Agreement.

97. At all times relevant, and at Defendants' request, Plaintiffs performed work for Defendants before and after their scheduled shift, as well as during all and/or part of their unpaid meal breaks.

98. At all times relevant hereto, Defendants were aware that their hourly paid non-exempt employees, including Plaintiffs, performed work and work-related tasks before and after their scheduled shift, on a routine basis.

99. The task of performing work and work-related tasks before and after their scheduled shift is an essential component of Defendants' business operations at Defendants' call centers.

100. Defendants at all times considered the tasks performed by Plaintiffs, before and after their scheduled shifts, to be compensable work, had that same work been performed during their scheduled shift.

101. Defendants' Corporate Code of Conduct permits and/or requires their employees to perform work for Defendants before and after their scheduled shift, as well as during their meal breaks, and requires that such time be paid.

17

Case 4:20-cv-00302-BP     Document 1     Filed 04/16/20     Page 17 of 20

102. Defendants' managers and/or supervisors often observed Plaintiffs performing work and work-related tasks for Defendants before and after their scheduled shift and during their meal breaks, and often assisted them in performing that work.

103. Under Defendants' policy and practice, Defendants at times required Plaintiffs to be present for work before and after their scheduled shift, on a daily basis.

104. Defendants' business records reflected data, so that Defendants' managers could see and know that non-exempt employees, including Plaintiffs, routinely performed work for Defendants before and after their scheduled shifts and during their meal breaks.

105. Defendants did not instruct Plaintiffs to not perform work for Defendants before and after their scheduled shift, or during their meal breaks.

106. By knowing of, permitting, and/or requiring Plaintiffs to perform services for Defendants before their scheduled shifts, Defendants assented to Plaintiffs performing services before the start time of their scheduled shifts.

107. Defendants assented to pay Plaintiffs at an agreed-upon hourly rate for all work Defendants permitted and/or required, including at 1.5 times their regular hourly rate for all time beyond 8 hours worked in a single work day.

108. Defendants assented to Plaintiffs performing services before, during and after their scheduled shifts, including during meal breaks, by, among other means, Defendants' knowledge and awareness of those duties being performed at those times, Defendant's policy and practice of permitting and/or requiring Plaintiffs to perform duties before and after their shifts and during their meal breaks, and before and after they had clocked in or out, by the lack of any instruction or meaningful effort by Defendants to forbid or not allow Plaintiffs to perform duties before or after their scheduled shifts, and through their Code of Business Conduct

and other directives distributed at and after an employee's orientation period that informed Plaintiffs and Defendants' other employees that they must perform work duties before and after their scheduled shifts.

109. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered lost wages and other damages and will continue to suffer other damages.

110. Plaintiffs have been damaged by not being paid the full amount of wages due to them for all time worked, in an amount not presently ascertainable, for the relevant time period.

WHEREFORE, Plaintiffs, and any others who may ultimately opt-in to this lawsuit, pray for an Order of judgment against Defendants, jointly and severally, as follows:

A. Award compensatory damages, liquidated damages, and consequential damages, including all pay owed, in an amount according to proof;

B. Award all costs and reasonable attorneys' fees incurred in prosecuting this claim;

C. Award pre-judgment and post-judgment interest, if permitted; and

D. Order such further relief as the Court deems just and equitable.

JURY DEMANDED ON THIS AND ALL COUNTS

Date: April 16, 2020

**Respectfully Submitted,**

/s/ Rowdy B. Meeks
Rowdy B. Meeks, MO #48349
Rowdy Meeks Legal Group LLC
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Telephone: 913 766-5585
Facsimile: 816 875-5069
Rowdy.Meeks@rmlegalgroup.com

**JEFFREY GRANT BROWN\***
Illinois Bar No. 6194262

19

Case 4:20-cv-00302-BP   Document 1   Filed 04/16/20   Page 19 of 20

jeff@JGBrownlaw.com
Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Blvd., Suite 107
Chicago, IL 60604
Tel: 312.789.9700
Fax: 312.789.9702

**GLEN J. DUNN, JR. \***
Illinois Bar No. 6274852
GDunn@GJDlaw.com
Glen J. Dunn & Associates, Ltd.
121 West Wacker Drive, Suite 1414
Chicago, IL 60601
Tel: 312.546.5056
Fax: 312.546.

**J. DEREK BRAZIEL\***
Texas Bar No. 00793380
jdbraziel@l-b-law.com
**TRAVIS GASPER\***
Texas Bar No. 24096881
gasper@l-b-law.com
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
www.overtimelawyer.com

Attorneys for Plaintiff
\**Pro Hac Vice* motion forthcoming

20